_____ Priority
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3



FILED
CLERK, U.S. DISTRICT COURT

SEP -6 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TAMARA R. BEHRMANN,

Plaintiff,

v.

IDENTIX INCORPORATED, a
Delaware Corporation,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CV 06-3473 SVW (RZx)

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER
VENUE [9]

ENTERED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP - 7 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

**THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).**

## I.   INTRODUCTION

Plaintiff Tamara Behrmann ("Behrmann" or "Plaintiff")  was a sales representative employed by Defendant Identix, Inc. ("Identix" or "Defendant"), a marketer of bio-metric identification equipment. Plaintiff worked out of her home office in Los Angeles, and she had substantial responsibility for federal government contracts. Behrmann's employment relationship with Identix ended in January 2005. Plaintiff's primary allegation is that Identix discriminated against her on the basis of gender by paying her less than similarly situated

26

male sales representatives, in violation of California's Equal Pay Act, Cal. Labor Code § 1197.5, and California's Fair Employment and Housing Act. She also alleges wrongful termination in violation of public policy, and seeks declaratory relief that the arbitration provision in the Sales Commissions Agreement does not apply to these claims. Behrmann does not allege any federal causes of action, meaning that the sole basis of subject matter jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332.

This is not the first forum to hear the dispute between Behrmann and Identix. In September 2005, Identix brought a declaratory judgment action in Minnesota District Court to compel arbitration. In April 2006, the Court granted summary judgment for Identix and compelled the parties to arbitrate in Minnesota. The parties do not dispute that Plaintiff is required to arbitrate her claim for unpaid wages, and Plaintiff has not repeated that claim in the instant action. But the parties dispute whether the Minnesota court's order compelling arbitration extends to Plaintiff's discrimination and wrongful termination claims.

On June 7, 2006, Plaintiff filed the instant complaint in this Court to assert the discrimination claims. Identix responded with the instant motion, styled as a motion to dismiss, arguing that (1) Plaintiff's claims are covered by the applicable arbitration agreement; (2) if the arbitration agreement does not cover Plaintiff's claims, Plaintiff is judicially precluded from arguing this legal position; (3) even if arbitration is not mandatory, the case should be transferred to the District of Minnesota; and (4) if all else fails, this Court should dismiss or stay the case pending arbitration.

Initially, this Court was inclined to transfer this case to the District of Minnesota pursuant to the discretionary federal comity doctrine known as the "first-to-file rule." See, e.g., Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991). However, upon further consideration, this Court has decided to rule on Defendant's motion to dismiss.

For the reasons discussed below, this Court GRANTS Defendant's motion to dismiss for improper venue.

## II.    FACTS

Plaintiff was employed by Identix in California from 2002 to January 2005. In August 2004, Plaintiff signed a "Sales Commissions Agreement" with Identix. The Sales Commissions Agreement described the commissions schedule and set forth the method of calculation. It also contained an arbitration clause, which stated: "[i]n the event of any case, controversy, or dispute between the parties with respect to the interpretation, breach or termination of this Agreement . . . the parties agree to submit such case, controversy, dispute or difference to mandatory binding arbitration." (Complaint Ex. Q at 90.) The Commercial Arbitration Rules of the American Arbitration Association ("AAA") were specified as the governing arbitration rules. (Id.) The agreement also provided that "[t]he arbitration shall be conducted in Minneapolis, Minnesota, U.S.A." (Id.) Plaintiff did not want to sign this agreement, initially writing: "I must state for the record there are still areas of this agreement I'm not comfortable with nor personally or professionally agree to- However in order to receive my

earned commissions I was told my signature needed to be turned in with this packet." (Id. at 8 n.1.)

Plaintiff resigned from Identix in January 2005. In March 2005, Plaintiff filed an administrative complaint for unpaid wages with the California Department of Industrial Relations. In April 2005, the Labor Commissioner replied that it was unable to investigate her complaint due to staffing and budgetary constraints. On June 24, 2005, Plaintiff sent a demand letter to Defendant asserting that Plaintiff was owed $107,393.19 in earned but unpaid commissions. In addition, the letter alleged that Defendant had engaged in gender discrimination against Plaintiff. She was paid a base salary between $70,000 and $80,000, while her male co-workers earned base salaries ranging from $90,000 to $95,000. The letter also made a demand for over $400,000. Also on June 25, 2005, Plaintiff applied for a right-to-sue letter from the California Department of Fair Employment and Housing. The letter was issued on August 2, 2005.

Identix responded with a settlement offer of $35,000, which it subsequently reduced to $30,000. In a letter dated July 29, 2005, Plaintiff's counsel rejected the offer, and suggested that the parties stipulate to venue in Los Angeles Superior Court. On August 10, 2005, Plaintiff and Defendant entered into an agreement to toll the statute of limitations on Behrmann's "claims for wage and hour violations." (Id. Ex. F. at 35.) The tolling agreement did not contain a venue stipulation.

On September 8, 2005, Plaintiff sent another demand letter to Identix. The letter repeated the unpaid wage and gender discrimination allegations, and stated Plaintiff's intent to file an

action in Los Angeles Superior Court if Defendant would not agree to media

On September 16, 2005, Identix filed a declaratory judgment action in federal court in Minnesota, seeking an order to compel arbitration. In this filing, Identix sought a declaration that Behrmann is "contractually obligated to refrain from filing or initiating judicial proceedings with respect to any of her currently threatened claims against Identix in state or federal court." (Complaint Ex. G at 42.)

On October 11, 2005, Plaintiff sent a letter to Defendant. Plaintiff asserted that the gender discrimination claims were not covered by the relevant arbitration clause, but proposed that the parties agree that all issues be arbitrated in Los Angeles, with an arbitrator other than the AAA. The parties never reached agreement on a forum for arbitration. In discussions with the AAA, however, Plaintiff discovered that AAA's due process protections would cause the dispute to be heard under its Employment Rules, rather than under the Commercial Rules as specified in the arbitration clause.

On December 28, 2005, Plaintiff filed three arbitration applications with the AAA, arguing that the Commercial Rules were unconscionable, that the Employment Rules should govern arbitration, and that the venue for arbitration should be California. For reasons that are unclear from the record, Defendant did not receive a copy of Plaintiff's application. On January 20, 2006, the AAA accepted the application and notified the parties that arbitration would proceed in California under the Employment Rules. The filing fee under the Employment Rules was $125 for the employee and $825 for the employer. (Compl. Ex. J at 69.)

On January 31, 2006, in the Minnesota District Court, Identix filed a motion for default judgment and to enjoin the California arbitration proceeding.  Identix contended that the Sales Commissions Agreement required arbitration to take place in Minnesota.  The clerk of the court entered default on February 1, 2006.  On February 24, 2006, Behrmann filed a motion to set aside the default.  Additionally, Behrmann argued that the arbitration in California should not be enjoined because procedural issues such as venue should be decided by the arbitrator, rather than by the court.  In a footnote, Behrmann noted that she had gender discrimination claims in addition to her claim for unpaid wages, and she only submitted all claims to arbitration in the interest of economy.  (Def. Req. Jud. Notice Ex. D at 55-56 n.5.)

On March 20, 2006, Judge Doty of the Minnesota District Court notified the parties that he intended to treat the motion for default as a motion for summary judgment.  (Id. Ex. E at 100.)  On April 6, 2006, Judge Doty granted summary judgment for Identix.  (Complaint Ex. K.)  The court stated that the "the parties do not at this time dispute any issue of material fact or contract construction," and "the only issue presently before the court is whether it has the authority to enforce the arbitration forum selection clause in the commissions agreement."  (Id. Ex. K at 74.)  The Court further noted that Plaintiff and Defendant were in dispute as to her unpaid wages, "in addition to other claims not governed by the commissions agreement."  (Id. Ex: K at 72.)  The court concluded that

> any and all disputes between the parties with respect to the
> Sales Commissions Agreement shall be arbitrated in accordance
> with the terms of that agreement, which includes proceeding with

arbitration in Minneapolis, Minnesota.  [Behrmann] is enjoined from further prosecuting her AAA proceeding currently pending in California, insofar as that proceeding involves disputes with respect to the Sales Commissions Agreement.

(Id. at 77.)  The court did not specifically rule on the scope of the arbitration clause.

On May 9, 2006, Identix sent a letter to AAA, informing AAA of the court's ruling and contending that the venue for arbitration should be moved to Minnesota pursuant to court order.  (Id. Ex. L at 78.)  Moreover, Identix argued that the Commercial Rules, rather than the Employment Rules, should govern arbitration, because the court had ordered that arbitration proceed "in accordance with the terms" of the applicable arbitration agreement.  On May 12, 2006, AAA informed Identix and Behrmann that the arbitration would commence in Minnesota under the Commercial Rules, and that the filing fee for Behrmann would be increased to $5,875.  (Id. Ex. L at 80.)  On May 22, 2006, Behrmann replied to AAA, disputing that arbitration had to take place under the Commercial Rules.  (Id. Ex. N at 83-84.)  Behrmann emphasized that the court did not specifically rule on the choice of arbitration rules, and that the Commercial Rules did not provide an appropriate remedy for her gender discrimination claims.  (Id.)  On May 25, 2006, AAA's intake coordinator replied that Behrmann should ask the court to clarify its order or raise the issue with the arbitrator.  (Id. Ex. O.)  Behrmann then filed the instant action on June 7, 2006.

## III. DEFENDANT'S MOTION TO DISMISS BASED UPON IMPROPER VENUE

Defendant's motion seeks dismissal of Plaintiff's claim based on venue as a result of the forum selection clause found in the Sales

Commissions Agreement. In determining the standard to apply, the Ninth Circuit has recently held that "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). Thus, all reasonable inferences and factual conflicts must be drawn in Behrmann's favor.

## A. Scope of Arbitration Clause

Identix argues that the case should be dismissed because Behrmann had agreed to arbitrate her claims in the Sales Commissions Agreement. Behrmann counters that the arbitration clause only pertains to matters addressed by the Agreement, such as commission rates, and not gender discrimination claims. On the first analysis, Plaintiff appears correct. The arbitration clause only encompasses any dispute "with respect to the interpretation, breach, or termination" of the Sales Commissions Agreement. The "with respect to" language is substantially narrower than the typical "arising out of" or "relating to" language found in many arbitration agreements. "With respect to" seems to require arbitration of only issues specifically defined in the contract, such as the amount of sales commissions. Behrmann's discrimination claims are not specifically based on the contract; she would have a gender discrimination claim for unequal pay even if she has received all the commissions specified in the contract.

Moreover, the Ninth Circuit has held that "a knowing waiver does not occur where neither the arbitration clauses nor any other written employment agreement expressly put the plaintiffs on notice that they were bound to arbitrate Title VII claims." Renteria v. Prudential

Ins. Co., 113 F.3d 1104, 1108 (9th Cir. 1997) (internal quotation marks and citation omitted). In so holding, the court noted that "our public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes" is "at least as strong as our public policy in favor of arbitration." Id. at 1106 (internal quotation marks and citation omitted).

It seems logical that Renteria's rationale would also apply to FEHA. However, the California courts have been reticent to adopt the rule. The California Supreme Court's seminal case on FEHA and arbitration was decided in 2000. Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83 (2000). In Armendariz, the California Supreme Court did not reach this question, saying only that other courts had disagreed with Renteria's approach. See id. at 99 n.7. As such, the question remains relatively open.

Two contrasting California appellate court decisions inform the discussion. First, in Vasquez v. Superior Court, 80 Cal. App. 4th 430 (2000), the court held that rights asserted under FEHA could only be waived in an arbitration agreement where waiver was "clear and unmistakable" or "explicitly stated." Id. at 434 (quoting Wright v. Universal Maritime Svc. Corp., 525 U.S. 70, 80 (1998)). However, another case criticized Renteria, stating that the decision was against the "weight of authority." Cione v. Foresters Equity Servs., Inc., 58 Cal. App. 4th 625, 641 (1997); see also id. at 645 (noting that the standard set forth in Renteria "has been severely criticized by other federal courts and by another California appellate court"). The California Supreme Court has not yet resolved this split of authority.

9

Defendant attempts to argue that <u>Armendariz</u> stands for the proposition that an arbitration clause need not specifically reference statutory rights, such as FEHA. Thus, it is asserted that the language of the Sales Commissions Agreement arbitration provision is sufficient. However, this Court must analyze the two provisions to assess the merits of Defendant's claim. In <u>Armendariz</u>, the arbitration clause stated as follows:

> I agree as a condition of my employment, that in the event my employment is terminated, and I contend that such termination was wrongful or otherwise in violation of the conditions of employment or was in violation of any express or implied condition, term or covenant of employment, whether founded in fact or in law, including but not limited to the covenant of good faith and fair dealing, or otherwise in violation of any of my rights, I and Employer agree to submit any such matter to binding arbitration pursuant to the provisions of title 9 of Part III of the California Code of Civil Procedure, commencing at section 1280 et seq. or any successor or replacement statutes. I and Employer further expressly agree that in any such arbitration, my exclusive remedies for violation of the terms, conditions or covenants of employment shall be limited to a sum equal to the wages I would have earned from the date of any discharge until the date of the arbitration award. I understand that I shall not be entitled to any other remedy, at law or in equity, including but not limited to reinstatement and/or injunctive relief.

24 Cal. 4th at 92. The above agreement, even though it does not mention FEHA specifically, clearly states that arbitration will govern a termination that is allegedly "wrongful," or that is "founded in

10

fact or law" on the "violation of any of [the employees'] rights." This detailed language contrasts substantially with the Sales Commissions Agreement, which only claims to govern a dispute "with respect to the interpretation, breach, or termination" of the agreement.

Defendant's agreement is ambiguous, and far less helpful than the agreement analyzed in Armendariz. Plaintiff argues that the arbitration clause is inapplicable as a result. Importantly, "[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." Eng'rs & Architects Ass'n v. Cmty. Dev. Dep't, 30 Cal. App. 4th 644, 653 (1994).

Nonetheless, it has also been held that "[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute." United Transp. Union v. S. Cal. Rapid Transit Dist., 7 Cal. App. 4th 804, 808 (1992). As such, "arbitration is a highly favored means of dispute resolution." Id. at 808-09. This presumption would ordinarily favor granting Defendant's Rule 12(b)(3) motion.

However, the agreement analyzed in United Transport Union was part of a collective bargaining agreement, which implies that the agreement involved a negotiation between two sides at arms-length. It is not clear whether this presumption should apply when an employee signs a form contract, which the Sales Commissions Agreement appears to be. The California Supreme Court has previously ruled on a similar case in which it had "to balance the general policy favoring arbitration against ordinary principles of contract, which require

11

that agreements be interpreted to reflect the intent of the parties." Victoria v. Superior Court, 40 Cal. 3d 734, 738 (1985). In that case, the plaintiff was sexually assaulted while at a Kaiser-owned hospital; she sued under her health care policy, but the policy agreement included a form arbitration agreement. Id. at 737-38. The court ultimately held that "ambiguities in standard form contracts are to be construed against the drafter." Id. at 739.

The Sales Commissions Agreement is more like the arbitration clause found in Victoria than the agreement in United Transport Union. Plaintiff was not allowed to negotiate the terms of the Sales Commissions Agreement. In fact, she even tried to object to the terms, but was ultimately required to sign the agreement as Defendant desired.

Defendant's arbitration clause only covers disputes "with respect to the interpretation, breach, or termination" of the Sales Commissions Agreement. This form contract does not even include the term "wrongful," which was contained in the Armendariz arbitration agreement. While California law is inconclusive, there is a significant likelihood that the California Supreme Court would determine that the Sales Commissions Agreement's vagueness should be held against the Defendant. From a policy perspective this analysis would make sense, as it would encourage employers to carefully craft their unilaterally drafted arbitration agreements, and therefore reduce any unfair surprise that future disgruntled employees (or ex-employees) would experience from being forced to arbitrate claims under a similarly vague arbitration provision.

Because there is significant doubt as to whether the California courts would require arbitration as to the discrimination and wrongful

12

termination claims, this Court is inclined to find that Defendant has failed to meet the standard required under Rule 12(b)(3). The claims for gender discrimination and wrongful termination cannot be dismissed absent another defense.[1]

B.    Judicial Estoppel

If this Court were the first forum to hear this action, Defendant's motion to dismiss would be denied. However, this Court is not. The dispositive issue is whether Plaintiff is judicially estopped from now denying that arbitration encompassing sex discrimination claims and wrongful termination is permitted under the contract. Plaintiff's communications with the AAA, as opposed to the Minnesota District court, provide the best avenue by which Defendant may assert this doctrine.[2]

1.    This Court Can Consider Plaintiff's Arguments Made to the AAA

Since judicial estoppel "is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.

---

[1] The parties have also argued over whether the arbitration agreement is "unconscionable" based on Armendariz. However, because this Court should hold that Defendant has failed to meet its burden (as to this motion) that the Sales Commissions Agreement applies to Plaintiff's claim, it is unnecessary to reach this argument.

[2] Plaintiff's asserted legal position with the Minnesota District Court and this Court are sufficiently consistent. Before that court, Plaintiff specifically stated that she only "agreed to submit all claims to arbitration rather than proceed in two forums." (Def. Req. Jud. Notice at 55-56 n.6.) Further, there is no evidence that the Minnesota District Court accepted any purported inconsistent legal position. The Court clearly stated that Plaintiff had claims in addition to her unpaid compensation claim, which were not governed by the arbitration agreement.

1990). Additionally, it has been noted that "'[e]quitable' in this context refers more to fairness than to the technical distinction between law and equity." In re An-Tze Chang, 308 B.R. 448, 459 (B.A.P 9th Cir. 2004).

The Ninth Circuit has further explained judicial estoppel's purpose: "[t]he doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." Russell, 893 F.2d at 1037 (quoting Religious Tech. Ctr. v. Scott, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall, J., dissenting)); see also Stevens Tech. Servs., Inc. v. S.S. Brooklyn, 885 F.2d 584, 588 (9th Cir. 1989) ("Judicial estoppel precludes a party from asserting a position in a current legal proceeding which is contrary to the position that party previously asserted in another.").

Plaintiff has claimed that this doctrine only applies to inconsistent opinions taken by a party in the same judicial proceeding, and that Plaintiff has not acted in any manner inconsistent since filing its action with this Court. However, Plaintiff is incorrect for two reasons. According to the Ninth Circuit, it is "not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial." Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 604 (9th Cir. 1996). This opinion indicates that it is not only permissible for this Court to consider what Plaintiff has stated in a prior proceeding, but it may also inquire into Behrmann's prior conduct connected with an administrative (as opposed to judicial) body.

14

The Ninth Circuit has not expressly resolved whether an arbitration body, such as the AAA, should be considered an "administrative body" under Risetto. See Kaiser Cement Corp. v. Fishbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). However, other courts have expressly applied judicial estoppel to positions taken in arbitration. See Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999); see also Karaha Bodas Co. v. Negara, 264 F. Supp. 2d 490, 498 n.9 (S.D. Tex. 2003) ("It is widely held that a position taken in an arbitration can give rise to judicial estoppel."). This Court also believes that the judicial integrity of the courts is equally threatened by a clearly inconsistent position, regardless of whether that position is first communicated to an arbitration entity or a more traditional administrative body. As a result, Plaintiff's communications with the AAA, which can be construed as an administrative body, are relevant to the judicial estoppel analysis.[3]

---

[3]    Plaintiff has also argued in this case that judicial estoppel cannot be applied to statutory violations (FEHA and the Labor Code). However, Plaintiff's argument is incorrect. She cites two California cases and one Ninth Circuit case for this proposition.

As a preliminary matter, California decisions regarding the equitable application of judicial estoppel should not be considered binding on this court. Furthermore, one of these two cases was decided only in the context of a statutory provision that explicitly barred the application of judicial estoppel. MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., 36 Cal. 4th 412, 423 (2005) (discussing Cal. Bus. & Prof. Code § 7031(a)). There is no evidence that FEHA or the Labor Code contain analogous provisions. Additionally, the second case cited discussed only traditional notions of equity, such as unjust enrichment. Ghory v. Al-Lahham, 209 Cal. App. 3d 1487, 1492 (1989). Judicial estoppel is different. As discussed earlier, "'[e]quitable' in this context refers more to fairness than to the technical distinction between law and equity." In re An-Tze Chang, 308 B.R. at 459.

Finally, Plaintiff cites to one case from the Ninth Circuit where judicial estoppel was discussed in the context of an arbitration

## 2.   The Supreme Court's Three-Factored Analysis

The Supreme Court has recently established the basic parameters of judicial estoppel.  See New Hampshire v. Maine, 532 U.S. 742 (2001).  There are three factors that this Court has been explicitly permitted to consider: 1) whether Plaintiff's prior position was "clearly inconsistent" with its current position, 2) "whether the party has succeeded in persuading a court to accept that party's earlier position," and 3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  Id. at 750-51.

While the Court detailed these three factors, it cautioned that it was only providing a set of guidelines - not a strict test.  Id. ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel."); see also Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (noting that district courts "may consider" the factors enumerated in New Hampshire).

### a.   Factor One

First, this Court must determine whether Plaintiff's positions taken with the AAA are "clearly inconsistent" with its legal arguments made to this Court.

---

clause.  While Plaintiff tries to argue that judicial estoppel cannot apply to unconscionable or invalid arbitration agreements based on this case, its interpretation is wrong.  The Ninth Circuit only held that judicial estoppel could not apply to the "underlying merits" of the arbitration dispute, because such action went beyond the Court's power.  Rockwell Int'l Corp. v. Hanford Atomic Metal Trades, 851 F.2d 1208, 1211 (9th Cir. 1988).

Plaintiff's counsel wrote the AAA on December 28, 2005. In this letter, Plaintiff's counsel stated that he was enclosing the Sales Commissions Agreement, as well as three applications for arbitration. (Complaint Ex. I at 63.) The three forms entitled "Demand for Arbitration" are all identical as to the key issues. First, Plaintiff's form states:

> The named claimant, party to an arbitration agreement dated 8/27/04, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

(Id. Ex. I at 66-68.). Additionally, rather than simply listing the claim for unpaid commissions, Plaintiff made the following statement as to the "Nature of the Dispute" that purportedly arose out of the arbitration agreement:

> Employment dispute while employed in Calif: [sic] damages and penalties for unpaid wages; gender discrimination; wrongful termination in violation of public policy; unfair business practices (B & P code sec. 17200); and declaratory relief to determine whether the AAA commercial rules or AAA National Empl. Rules are appropriately applied to an employment dispute with a Calif employee and venue.

(Id.) Based upon the combination of the two above-quoted sections of the demand for arbitration, it is reasonable to infer that Plaintiff was informing the AAA that all of the listed bases for arbitration arose out of the arbitration agreement dated August 27, 2004. (See also Complaint Ex. Q.) This also appears to be the conclusion of the AAA, which wrote a letter on January 20, 2006 determining that "this dispute arises from an employer promulgated plan." (Complaint Ex. J

17

at 69.). The letter did not differentiate between the unpaid compensation claims and those brought by Plaintiffs in the current litigation.

The only help that Plaintiff can look to is the fact that in its December 28, 2005, letter to the AAA did explicitly state that "initial arbitration hearings . . . may be necessary to determine . . . the scope of arbitration." (Complaint Ex. I at 63.) Thus, Plaintiff could argue that even if the AAA had determined that the entire dispute was to be determined based upon the Sales Commissions Agreement, it was a result of the AAA's failure to properly and fully read Plaintiff's letter. However, this mere mention in a cover letter cannot undo the damage done in Plaintiff's legally operative documents - the three demands for arbitration. These three demands clearly stake out a legal position that the Sales Commissions Agreement covers Plaintiff's discrimination and wrongful termination claims.

In the current litigation, Plaintiff has claimed that the gender discrimination claims and wrongful termination claims are not arbitrable under the Sales Commissions Agreement. Its written communications to the AAA are clearly inconsistent with that claim.

### b.    Factor Two

In terms of the second factor, this Court should decide whether Plaintiff persuaded the AAA to adopt its prior inconsistent legal position. As the Supreme Court stated, "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations.'" New Hampshire, 532 U.S. at 750-51 (citation omitted).

The AAA, by its letter dated January 20, 2006, states that it would resolve all the claims listed by Plaintiff on its demand for

18

arbitration. (Complaint Ex. J-1.)    Thus, Plaintiff was successful in persuading the AAA to adopt its prior inconsistent legal position.

If a court permits this current litigation to continue, an outside observer might reasonably infer that the AAA was "misled" based on the Plaintiff's current legal arguments, which would constitute an affront to judicial integrity.  <u>New Hampshire</u>, 532 U.S. at 750.

### c.    Factor Three

The third factor focuses on whether Defendant would suffer any unfair detriment, or Plaintiff would gain any unfair advantage, from allowing this litigation to continue.

For several months, Plaintiff sought to arbitrate all of her claims with the AAA.  Plaintiff apparently only changed her mind about the AAA's authority when the Minnesota court held that the Sales Commissions Agreement required the arbitration to be conducted in Minneapolis rather than California, and when the AAA subsequently reversed its position and decided to apply the AAA's Commercial Rules rather than its Employment Rules.  (<u>See</u> Complaint Ex. K at 77, Ex. M at 81.)

Allowing Plaintiff to try her gender discrimination and wrongful termination claims at this point in this Court would clearly give her an unfair advantage.  She had initially represented a legal position that led the AAA to accept all of her claims for arbitration.  Now, she is engaging in an attempt to forum shop.

Defendant would also suffer unfair detriment.  Instead of resolving the entire dispute through the AAA, which it had expected, Defendant now faces the daunting task of defending itself on two fronts: 1) the discrimination and wrongful termination claims in this

Court, and 2) the unpaid compensation claim in front of the AAA. This will likely be very costly, and is unfair considering that both parties were in substantial agreement for months that the entire dispute would be settled in arbitration. Additionally, had Plaintiff made Defendant aware of its current position months ago, these issues might have been resolved significantly sooner and lessened the burden of litigation. Before this action was filed on June 7, 2006, the parties had only disputed where the arbitration would take place, and what rules would apply (not which claims were covered).

### 3. Conclusion

All three factors for the application of judicial estoppel weigh heavily in Defendant's favor. In order to preserve the integrity of the judicial courts, this Court believes it is appropriate to invoke judicial estoppel in this case. Consequently, Plaintiff is barred from arguing that the Sales Commissions Agreement does not govern her gender discrimination and wrongful termination claims.

## IV. CONCLUSION

For the foregoing reasons, this Court GRANTS Defendant's motion to dismiss for improper venue pursuant to the Sales Commissions Agreement's forum selection clause. These claims must be arbitrated with the AAA, in accordance with the terms of the Sales Commissions Agreement.

IT IS SO ORDERED.

DATED: 9/5/06

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

20